IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEORGE ROBINSON** | : | **CIVIL ACTION** |
| | : | No. 14-3374 |
| v. | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of Social Security** | : | |

### MEMORANDUM ORDER

This 28th day of January, 2016, upon consideration of Plaintiff's Request for Review and Defendant's Response thereto, and after careful review of the Report and Recommendation of the Magistrate Judge, for the reasons that follow, it is hereby **ORDERED** that:

1. The Claimant's Request for Review is **GRANTED**; and

2. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Order.

Claimant contends he is disabled by virtue of a combination of physical and mental conditions, one of which is a degeneration of the spine for which he underwent fusion surgery. In Objections to the Magistrate Judge's Report and Recommendation, the Claimant asserts multiple errors allegedly committed by the Administrative Law Judge (ALJ).  For purposes of my analysis, I find three errors relevant, one of which constitutes the principal basis for remand, and the other two of which lend weight to my conclusion in the context of this case.

The conclusion of Claimant's primary care physician, Scott Kurzrok, D.O., provides the primary support for his claim of disability.  At the time of the hearing before the ALJ, the most current assessment of Claimant's ability to function was performed by Dr. Kurzrok in August, 2012.  The ALJ placed significant emphasis on earlier assessments, one in November and one in December, 2011.  In discounting the opinion of Claimant's treating physician, the ALJ reasoned

1

that Dr. Kurzrok did not have specialty training in the field of orthopedics, and he was not the specialist who provided the principal treatment for Claimant's back condition. The ALJ specifically found that the degree of limitation certified by Dr. Kurzrok was inconsistent with the medical evidence and the findings of other providers who either treated or evaluated Claimant.

I find this conclusion of the ALJ problematic when viewed against the evidence in the record, because her Findings failed to address the medical significance of critically important radiological evidence. Claimant underwent spinal fusion surgery performed by neurosurgeon Paul Marcotte at the University of Pennsylvania Hospital in September, 2010. In advance of that surgery, an MRI of the spine was performed. The full report from that study is not part of the record, but in correspondence to Dr. Kurzrok dated August 11, 2010, Dr. Marcotte describes the findings and indications for the surgery he was about to perform. The focus of the study was L5-S1. Dr. Marcotte noted that Claimant had "advanced disease" at that level, but only "degenerative changes" at the adjacent level of L2-3. At L5-S1, Dr. Marcotte noted "severe foraminal stenosis." He found "recurrent right leg pain and numbness" and "chronic lower back pain," which in his opinion "are likely from the foraminal stenosis at L5-S1." Record at 174.

Claimant returned to Dr. Marcotte two years later in August, 2012. According to the ALJ, "improved symptoms were indicated, with a flair-up of numbness with vigorous activity." Record at 64. A more complete review of Dr. Marcotte's letter report to Claimant's treating physician Dr. Kurzrok reveals that the Claimant "has had residual right foot numbness and lower back pain. … and residual radiculopathy since his surgery." Record at 274. Although Dr. Marcotte's working premise was that this represented a "flareup" resulting from "overactivity," he ordered an MRI "to rule out the unlikely possibility of adjacent level disease." *Id.*

In fact, an MRI performed on September 6, 2012, did indeed demonstrate the existence of new adjacent level disease. Whereas the 2010 study and remedial surgery dealt with narrowing

2

of the canal at L5-S1 and only degenerative changes at L2-L3, the 2012 study showed degenerative spondylosis at L2-L3 and L3-L4 with "moderate to severe bilateral foraminal narrowing and sub articular stenosis particularly at L3-L4." Record at 312. The medical significance of this is clear, in that it was a similar finding of stenosis at a different level, L5-S1, that Dr. Marcotte concluded was the cause of Claimant's previous pain, and required a spinal fusion in 2010.

The results of this MRI are cited by the ALJ in her Findings (Record at 64), but their potential medical significance is never addressed. Remand is required on this basis alone, because the Third Circuit has made clear that meaningful evidence suggesting the existence of disability must, at a minimum, be addressed:

> The Secretary must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.

*Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal citations omitted). *See also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121–22 (3d Cir. 2000).

The ALJ summarily concluded that both Claimant's and Dr. Kurzrok's testimony were inconsistent with the 2012 MRI findings, with no reason or explanation. Record at 65, ¶ 6. Given that the 2012 study indisputably showed new and extensive findings of stenosis at a different level in the spine—findings almost identical to those that had previously required complex fusion surgery—some substantive analysis was necessary.

It is at this juncture where two of Claimant's other objections gather stronger force, namely the ALJ's failure to take into consideration the significance of *progressive* degenerative conditions, and her failure to accord due weight to the testimony of Claimant's treating physician. In the same section of the Findings in which the ALJ dismissed the significance of

the 2012 study, she gave significant weight to the opinions of two evaluators who had last seen Claimant in 2011.  Aside from the fact that these physicians lacked any opportunity to observe the Claimant clinically, neither would have had the benefit of the 2012 MRI showing new and significant stenosis at a higher level in the spine.  Dr. Kurzrok's findings of disability certified in August, 2012 correspond in time with the new radiological findings.

Although I am not persuaded that this is a case where a treating physician's opinion is necessarily entitled to controlling weight under 20 C.F.R. § 404.1527(d)(2), I am persuaded that the principles recognized in *Fargnoli v. Massanari*, 247 F.3d 34 (3d Cir. 2001) and *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993) require remand.  The 2012 MRI lends powerful, objective, contemporaneous support to Dr. Kurzrok's opinion.  It is only cited and not meaningfully addressed in the analysis of the ALJ, nor does she set forth a reasoned basis for accepting the opinions of evaluating physicians in a case involving a degenerative condition, where their exams occurred earlier in time, without the benefit of a newly performed study.

This case differs from *Chandler v. Commissioner of Social Security*, 667 F.3d 356 (3d Cir. 2011) in two important respects.  There, not all of the newly issued medical reports were available at the time of the hearing before the ALJ.  Moreover, the reports in question would not necessarily have changed the conclusions of the evaluating physicians.  Here, in contrast, the Claimant's neurosurgeon deemed it prudent to perform an MRI to determine if the patient had developed any "adjacent level disease."  Such proved to be the case, and the Claimant here is entitled to specific, reasoned consideration of the implications of that progression upon his Claim for benefits.

                                                    /s/ Gerald Austin McHugh
                                            United States District Court Judge